**THILL SECURITIES CORPORATION et al., Plaintiff,**

v.

**The NEW YORK STOCK EXCHANGE, Defendant,**

and

**United States of America and United States Securities and Exchange Commission, Intervening Defendants.**

Civ. A. No. 63–C–264.

United States District Court, E. D. Wisconsin.

Aug. 15, 1979.

E. Campion Kersten, Arlo A. McKinnon, and John W. Emmerling, Milwaukee, Wis., for plaintiff.

Robert V. Abendroth, Milwaukee, Wis., William E. Jackson, Isaac Shapiro and Mark L. Davidson, New York City, for defendant; Milbank, Tweed, Hadley & McCloy, New York City, Whyte, Hirschboeck, Minahan, Harding & Harland, S. C., Milwaukee, Wis., of counsel.

Thomas E. Kauper, Asst. Atty. Gen., Donald I. Baker, B. Barry Grossman, Joel Davidow, C. Coleman Bird, Lawrence Hellman, and Seymour H. Dussman, Attys., Dept. of Justice, Washington, D. C., for intervening defendant United States of America.

Walter P. North, Associate Gen. Counsel, Alan Blank, Sp. Counsel, and Theodore L. Freedman, Atty., U. S. Securities and Exchange Comm., Washington, D. C., for in-

tervening defendant United States Securities and Exchange Commission.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for treble damages and for injunctive and declaratory relief brought pursuant to §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and § 4 of the Clayton Act, 15 U.S.C. § 15. The plaintiff Thill Securities Corporation ("Thill") was a registered broker-dealer in securities. The plaintiff has gone out of business since the suit was commenced. The defendant is the New York Stock Exchange ("Exchange"). The basic issues raised by the suit are described in *Thill Securities Corporation v. New York Stock Exchange*, 433 F.2d 264, 266–267 (7th Cir. 1970), cert. denied 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971):

"Plaintiff Thill Securities Corporation, ('Thill') is a licensed securities dealer-broker, registered with the Securities and Exchange Commission, and a member in good standing of the National Association of Securities Dealers, Inc., but is not a member of the New York Stock Exchange. It brings this action on its own behalf and on behalf of all other securities dealers and brokers similarly situated, being those who are not members of the New York Stock Exchange and who are denied access to the auction market and trading facilities of the Exchange except through one of its members. In its complaint Thill charges the Exchange with substantial anti-competitive conduct in violation of the antitrust laws of the United States. Sherman Antitrust Act, § 1 and § 2, 15 U.S.C. § 1 and § 2; and Clayton Act, § 4, 15 U.S.C. § 15. Specifically, Thill charges that the Exchange has engaged in an unlawful and unreasonable combination and conspiracy in restraint of interstate trade and commerce and has unlawfully and unreasonably monopolized the securities market in the United States by among other things adopting, subscribing and adhering to a rule which prohibits any member of the Exchange from sharing any commission earned from the purchase or sale of securities with a non-member, even though the non-member may have furnished the order; and by discriminately discouraging customers and prospective customers of Thill and other non-members from doing business with non-members.

"Thill alleges that as a proximate result of the unlawful and monopolistic rules and practices of the Exchange, it and other non-members of the Exchange are totally deprived of commissions or other fair compensation on transactions which they have initiated and serviced. It further alleges that the intended necessary and actual effect of this unlawful conduct is to restrain trade by preventing any competition by and between members of the Exchange and non-member securities dealers and brokers. Thill alleges to have suffered damages in the amount of seven million dollars, for which it seeks treble damages ($21,000,-000) under the antitrust laws. It also seeks a declaratory judgment that the Exchange's prohibition against sharing of commissions constitutes a violation of the antitrust laws; and an injunction prohibiting the Exchange from enforcing the prohibition. Subsequent to the filing of this action, Thill Securities Corporation went out of business.

"The defendant Exchange does not contest the anti-competitive effects of its rule prohibiting the sharing of commissions—sometimes referred to as the anti-rebate rule. At oral argument its counsel admitted, as is obvious, that the conduct complained of would constitute a violation of the anti-trust laws, were those statutes applicable to the activities of the Exchange in this case. Its position is that the Sherman Act does not apply to the rule of the Exchange prohibiting the sharing of commissions by members with non-members. It contends that this

broad immunity is enjoyed by virtue of the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.) which authorizes registered national securities exchanges to adopt rules in respect to the 'fixing of reasonable rates of commission' subject to review and revision by the Securities Exchange Commission under section 19(b) of the Act. 15 U.S.C. § 78s(b). It also contends that the SEC has and is exercising exclusive review jurisdiction over such rules of the Exchange, and that its conduct is thus immune from antitrust liability. This immunity, in its view, extends beyond the 'fixing of reasonable rates of commission' and includes rules relating to the 'sharing' of commissions, because the prohibition against sharing of commissions with nonmember broker dealers is an integral part of the 'fixing of reasonable rates'."

On August 26, 1969, this Court granted summary judgment to the defendant on the basis that the prohibition against the sharing of commissions (the "antirebate rule") is a method of regulating commission rates and thus an integral part of the fixing of commissions, that the Securities and Exchange Commission ("SEC") is exercising its powers of supervision over the commission structure of the Exchange, and therefore that the rule is exempt from the operation of the antitrust laws and it would be improper for the court to review the reasonableness of the antirebate prohibition. *Thill Securities Corporation v. New York Stock Exchange,* 1969 Trade Cases § 72,911 at 87,490. The Seventh Circuit reversed and remanded the case for trial, holding that there was an issue of fact as to whether the SEC was exercising its supervisory authority in the matter of commissions and that, even if it were, the Court must then decide whether the antirebate rule is necessary to effectuate the purpose of the Securities Exchange Act of 1934 before an exemption from the antitrust laws could be found:

"Before the investing public of the United States may be deprived of the benefit of competition through the vehicle of Exchange rules, it must be established that the Exchange's exemption from the antitrust laws is necessary to discharge its responsibilities under the Securities Exchange Act. [Citations omitted.] In short, its exemption must be based on a showing of true necessity. As applicable here, it must be established that subjecting the antirebate rule to antitrust attack will frustrate the purpose of the Securities Exchange Act or make it substantially ineffective. * * *

"In the record before us there is no evidence, save for the allegations of plaintiff, as to the effects of the anticompetitive conduct complained of; there is no evidence as to the extent to which the challenged rule is subject to actual review by the SEC; there is no evidence as to what in the regulatory scheme 'performs the antitrust function'; and, most notably, there is no evidence as to why the antirebate rule must be preserved as 'necessary to make the Securities Exchange Act work.' * * *" 433 F.2d, at 269–270.

In the course of its decision the Seventh Circuit did not disagree with this Court's prior finding that the antirebate rule is an integral part of the "fixing of reasonable rates of commission" within the meaning of § 19(b)(9) of the Securities Exchange Act of 1934, 15 U.S.C. § 78s(b)(9). See *Thill Securities Corporation v. New York Stock Exchange,* 1969 Trade Cases § 72,911 at 87,490; Pell, J., concurring in part and dissenting in part, 433 F.2d at 277–278.

Following the remand, the Court granted petitions by the SEC and the United States to intervene in the action. Trial commenced on November 27, 1972, and was concluded on February 28, 1973. On June 11, 1973, the Court ordered the preparation of proposed findings of fact and conclusions of law, and the action was taken under advisement. Thereafter, on June 26, 1975, the United States Supreme Court issued its decision in *Gordon v. New York Stock Ex-*

*change,* 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975), holding that the system of fixed commission rates for members of the Exchange is exclusively within the jurisdiction of the SEC under § 19(b)(9) of the Securities Exchange Act of 1934, 15 U.S.C. § 78s(b)(9), and not subject to attack under the antitrust laws. On January 23, 1975, the SEC issued an opinion adopting Rule 19b–3, effective May 1, 1975, which rule requires the elimination of all fixed non-member commission rates for transactions on the Exchange and therefore moots the injunctive portion of the complaint in this action. On September 22, 1975, the plaintiff Thill filed a motion to dismiss the complaint of the intervenor United States. By letter dated August 1, 1975, the United States notified the Court that it did not oppose the motion, since in light of the *Gordon* decision and the amendment of the Securities Exchange Act, effective June 5, 1975, P.L. 94–29, the injunctive relief requested by the United States was no longer necessary or appropriate. The Court will grant the motion to dismiss.

In *Gordon,* the Supreme Court reviewed at length the history of SEC regulation of the Exchange's system of fixed commission rates. It also noted congressional reaffirmation of the SEC's supervisory authority through the enactment of Public Law 94–29, effective June 5, 1975, which amended § 19(b) of the Securities Exchange Act and codified SEC Rule 19b–3 (referred to in the preceding paragraph), part of the effect of which rule was to eliminate fixed nonmember commission rates. The Court concluded as follows:

"* * * In contrast to the circumstances of *Silver* [*v. New York Stock Exchange,* 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963)], § 19(b) gave the SEC direct regulatory power over exchange rules and practices with respect to 'the fixing of reasonable rates of commission.' Not only was the SEC authorized to disapprove rules and practices concerning commission rates, but the agency also

was permitted to require alteration or supplementation of the rules and practices when 'necessary or appropriate for the protection of investors or to insure fair dealings in securities traded in upon such exchange.' Since 1934 all rate changes have been brought to the attention of the SEC, and it has taken an active role in review of proposed rate changes during the last 15 years. Thus, rather than presenting a case of SEC impotence to affect application of exchange rules in particular circumstances, this case involves explicit statutory authorization for SEC review of all exchange rules and practices dealing with rates of commission and resultant SEC continuing activity.

"* * * [W]e must then make inquiry as to the proper reconciliation of the regulatory and antitrust statutes involved here, keeping in mind the principle that repeal of the antitrust laws will be 'implied only if necessary to make the Securities Exchange Act work, and even then only to the minimum extent necessary.' 373 U.S., at 357, 83 S.Ct. 1246–47, 1257. We hold that these requirements for implied repeal are clearly satisfied here. To permit operation of the antitrust laws with respect to commission rates, as urged by petitioner Gordon and the United States as *amicus curiae,* would unduly interfere, in our view, with the operation of the Securities Exchange Act." 422 U.S., at 685–686, 95 S.Ct., at 2612–13.

The Supreme Court also discussed the Seventh Circuit's decision in *Thill*:

"Our disposition of this case differs from that of the Seventh Circuit in *Thill Securities Corp. v. New York Stock Exchange,* 433 F.2d 264 (1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971), where antitrust immunity for the NYSE's antirebate rule was claimed and denied. The Court of Appeals reversed a grant of summary judgment in favor of the NYSE, and remanded for further evi-

dence regarding the effects of the antirebate rule on competition, the degree of actual review by the SEC, and the extent to which the rule was necessary to make the Exchange Act work. 433 F.2d, at 270. This ruling is persuasively distinguishable on at least two grounds from the case at bar: First, there was no evidence presented regarding the extent of SEC review of the challenged rule. Second, the antirebate practice differs from fixed commission rates in that (1) it was not among the items specifically listed in § 19(b), although the practice might reasonably be thought to be related to the fixing of commission rates, and (2) it does not necessarily apply uniformly, and may be applied in a discriminatory manner. We do not believe it necessary, in the circumstances of this case, to take further evidence concerning the competitive effects of fixed rates, or the necessity of fixed rates as a keystone of the operation of exchanges under the Exchange Act. To the extent that the Court of Appeals in *Thill* viewed the question of implied repeal as a question of fact, concerning whether the particular rule itself is necessary to make the Act work, we decline to follow that lead." 422 U.S., at 686–687, 95 S.Ct. at 2613–14.

This Court found in its decision and order issued August 26, 1969, granting summary judgment to the Exchange, that the antirebate rule has an integral relationship to the fixing of commission rates and that the SEC possessed the authority to regulate and to review the antirebate rule. On further review of the issues raised in this action in light of the *Gordon* decision, and in light of the extensive record compiled in this action, the Court is persuaded that its previous findings were correct, and it is further persuaded that the SEC did in fact exercise its regulatory authority. See also *Abbott Securities Corp. v. New York Stock Exchange,* 384 F.Supp. 668 (D.D.C.1974), aff'd, 186 U.S.App.D.C. 328, 569 F.2d 159 (1977), wherein the Court, in reviewing a challenge under the antitrust laws to the antirebate rule of the New York Stock Exchange, found that the rule was "inextricably intertwined with the practice of fixing commission rates," that it was subject to review and was in fact reviewed by the SEC, and therefore that the *Gordon* decision was dispositive. The existence and actual exercise of the SEC's regulatory authority precludes the Court from considering under the antitrust laws whether the rule was in fact applied by the Exchange in a discriminatory manner. See *Gordon,* supra, 422 U.S. at 684, 95 S.Ct. at 2612, where the Court distinguished *Silver,* supra, because the SEC lacked authority to regulate the application of the rule at issue in that case, and therefore "could not prevent application of the rules that would have undesirable anticompetitive effects; there was no governmental oversight of the exchange's self-regulatory action, and no method of insuring that some attention at least was given to the public interest in competition."

The antirebate rule was in fact consistently treated by the SEC as a component of the fixed commission rate structure. Therefore, the history of SEC review and regulation of the fixed commission rate structure set forth in *Gordon* is equally applicable to the antirebate rule. Thus, once the Court makes the findings, as it now does, that the SEC possessed the authority to regulate and review the antirebate rule and that it consistently treated the rule in conjunction with the fixed commission rate structure, *Gordon* is dispositive of the complaint.

More specifically, based on the trial record, the Court makes the following findings of fact:

1. The Exchange was founded in 1792. Its principal activity has long been, and still is, to provide for its members and member organizations and their customers a two-way auction market in securities admitted to trading on the Exchange. (D. Ex. 760, ¶ 2.)

2. From its founding until May 1, 1975, the Exchange continuously had rules fixing

the minimum commission rates to be charged by its members to nonmembers, including nonmember brokers and dealers, on transactions in securities listed on the Exchange. Those rules at all times prior to 1972 included language prohibiting any rebates, discounts, or allowances made in any shape or manner. After March 1972, members were permitted to grant to nonmember broker-dealers a discount of up to a maximum of 40% from the minimum required to be charged the investing public. (Gray, Tr. 129–130; D. Ex. 661, Part 2 at 294–327; D. Ex. 663.)

3. The antirebate provision was an essential part of the rule fixing minimum commissions and necessary to make the latter rule work, since without it the rates fixed would not have been minimums. (Rotberg, Tr. 4565; Pollack, Tr. 3491; West, Tr. 3793; Davant, GX 1553, p. 3; Regan, GX 1568, p. 3.)

4. The provision prohibiting any rebate or discount from the fixed minimum commission was not challenged by the SEC when it reviewed each of the five modifications which the Exchange effected in its rules with respect to commission rates in 1938, 1942, 1947, 1953, and 1958. (D. Ex. 661, Part 2 at pp. 328–333; D. Ex. 760.)

5. The principal change effected by each of the rate schedule modifications between 1934 and 1958 was an increase in the level of rates, although in 1953 and 1958, limited changes were also made in the rate structure. In each instance, the SEC reviewed the proposed change. In some instances the changes were permitted to stand without modification. In 1942 and 1958, however, the SEC requested the Exchange to make certain modifications, and the Exchange complied. (D. Ex. 661, Part 2 at 329–333; Gray, Tr. 138–139.)

6. At the time of the proposed change in commission rates in 1958, the SEC ordered an inquiry into whether such rates "appear to be reasonable and in accordance with the standards contemplated by the applicable provisions of the Securities Exchange Act of 1934." After completion of its study, the SEC requested the Exchange to reduce certain commission rates at the lower range of the scale and to eliminate the "round turn" discounts adopted in 1953. (D. Ex. 661, Part 2 at 329–333; D. Ex. 760, Exh. D; GX 1475.)

7. In 1963 the SEC, in its Special Study, concluded that the question of nonmember access was too complex and too involved with other questions raised by the Exchange's minimum rate structure to be the subject of specific recommendations at that time, and recommended instead that it should be the subject of joint SEC–Exchange study. (D. Ex. 661, Part 2 at 349–350.)

8. In the fall of 1964, in response to a request by the SEC, the Exchange submitted to the SEC the first of its proposals with respect to nonmember broker access. (Calvin, Tr. 1534–1535, 1587; D. Ex. 649.)

9. This was followed in November 1965 by a proposal by the Exchange that nonmember brokers be granted a discount of 25%. (D. Ex. 510; Calvin, Tr. 1554–1555.)

10. Discussions between the SEC and the Exchange with respect to nonmember access continued throughout 1966, 1967, and into 1968. (Calvin, Tr. 1559; see, Pollack, Tr. 3471; see also D. Ex. 498; F. Wheat, Tr. 2235–2238, 2364; Rotberg, Tr. 4366–4368.)

11. In July 1968, the SEC commenced extensive public hearings designed to investigate, *inter alia,* the possibility of nonmember access. The hearings lasted for some two years and were participated in by 80 different organizations and approximately 150 witnesses. (D. Ex. 66; Calvin, Tr. 1620.)

12. At the conclusion of the hearings, in a letter dated October 22, 1970, the SEC requested the Exchange to submit to it for consideration, no later than June 30, 1971, a new proposal for reasonable nonmember access. (Calvin, Tr. 1633; D. Ex. 495; see D. Ex. 13, D. Ex. 551; Calvin, Tr. 1642–1644.)

13. The access proposals made by the Exchange were the subject of further pub-

lic hearings conducted by the SEC in July and October of 1971. (Freund, Tr. 2701.)

14. Following these hearings and the resolution of certain differences between the Exchange and the SEC, the Exchange amended its rules fixing minimum commissions so as to permit a discount of up to 40% to be allowed to qualified nonmember brokers. This amendment became effective in March 1972. (Calvin, Tr. 1671–1672; 1681–1682; D. Ex. 159; D. Ex. 558; D. Ex. 162.)

15. The evidence in the record, taken as a whole, establishes that the provision of the Exchange rule fixing minimum commissions which prohibited rebates or discounts from the minimum to be charged was, at all times relevant to this suit, the subject of actual review by the SEC, exercising its jurisdiction under § 19(b)(9) of the Exchange Act, 15 U.S.C. § 78s(b)(9).

As stated above, once the Court concludes that the antirebate rule was an integral part of the fixed commission rate structure and that it was subject to review and regulation by and was in fact reviewed and regulated by the SEC, then it follows as a matter of law, under the decision in *Gordon v. New York Stock Exchange,* 422 U.S. 659, 685–686, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975), that to allow the operation of the antitrust laws with respect to the antirebate rule would unduly interfere with the operation of the Securities Exchange Act, and, therefore, because the antirebate rule is exempted from the coverage of the antitrust laws, that the complaint fails to state a claim upon which relief can be granted and must be dismissed.

IT IS THEREFORE ORDERED that judgment be entered in favor of the defendant the New York Stock Exchange and the intervenor the Securities and Exchange Commission dismissing the plaintiff's complaint with prejudice.

IT IS FURTHER ORDERED that the motion of the plaintiff Thill Securities Corporation to dismiss the complaint of the intervenor the United States with prejudice is granted, and the intervenor's complaint is dismissed.